## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| ————————————————— ) | |
| MAURICE SMITH, individually ) | |
| and on behalf of all others ) | |
| similarly situated, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| RED CLASSIC TRANSIT, LLC, ) | |
| ) | |
| Defendant. ) | |
| ————————————————— ) | |

### CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.      This is a class action lawsuit brought on behalf of drivers for Red Classic Transit, LLC ("Red Classic").

2.      Plaintiff Maurice Smith, on behalf of himself and others similarly situated, alleges that Red Classic violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401, *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501, *et seq.*, by failing to pay its drivers wages for a mandatory on-boarding orientation and by subsequently deducting orientation pay from their initial paycheck(s).

3.      According to an offer letter addressed to Plaintiff at his home in Bowie, Maryland, offering Plaintiff a position as a regional driver based out of Red Classic's Baltimore location, Red Classic promised to provide Plaintiff with a $300 Comcheck payment (a type of instant funds transfer) as compensation for orientation. A copy of this offer letter is attached as Exhibit A.

4.      Plaintiff did, in fact, receive $300 upon completing orientation in Charlotte, North Carolina, but this amount was subsequently deducted from Plaintiff's earnings in his initial paycheck.

5.      Unbeknownst to Plaintiff, and undisclosed in the offer letter, was the fact Red Classic intended to treat the $300 as an "advance" on wages, not wages earned for the approximately 30 hours he spent in orientation, at the direction and control of Red Classic.

6.      By failing to pay Plaintiff any wages at all for orientation, Red Classic has violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206, and the MWHL, Md. Code Ann., Lab. & Empl. § 3-413.

7.      By failing to notify Plaintiff that the $300 would be treated as an advance and deducted from his first paycheck, and by failing to obtain authorization to do so, Red Classic has violated NCWHA, N.C. Gen. Stat. §§ 95-25.6, 25.13(1) & (4), and the MWPCL, Md. Code Ann., Lab. & Empl. § 3-503.

8.      On information and belief, Red Classic has a policy and practice of deducting orientation pay from all newly hired drivers' initial paychecks.

9.      Plaintiff seeks, both individually and for other similarly situated drivers, damages, liquidated damages, interest, attorneys' fees and costs, and all other allowable relief.

## PARTIES

10.     Plaintiff Maurice Smith worked as a driver for Red Classic from approximately October 2024 through approximately September 2025.  He was "employ[ed]" by Red Classic within the meaning of 29 U.S.C. § 203(g) and N.C. Gen. Stat. § 95-25.2(3) during this time. At all times relevant to the claims in this lawsuit, he was an adult resident of Prince George's County, Maryland.  He is currently a resident of Prince William County, Virginia.

11.     For the FLSA claim, Plaintiff brings this action on behalf of all similarly situated individuals who attended orientation for Red Classic during the three years prior to the filing of this complaint, to the extent that they choose to "opt in" to this action upon notice issued pursuant to 29 U.S.C. § 216(b).  The FLSA claim meets the requirements for collective action certification set forth in 29 U.S.C. § 216(b).

12.     For the NCWHA claim, Plaintiff brings this action on behalf of a putative class of similarly situated individuals, namely all drivers who attended Red Classic's orientation in North Carolina during the two years prior to the filing of this complaint.

13.     For the Maryland state law claims, Plaintiff brings this action on behalf of a putative class of similarly situated individuals, namely all drivers who performed at least some work in Maryland and attended Red Classic's orientation during the three years prior to the filing of this complaint.

14.     Defendant Red Classic Transit, LLC ("Red Classic") is a limited liability company organized under the laws of North Carolina with a principal office in Charlotte, North Carolina.

15.     Red Classic is registered as a non-Maryland limited liability company to do business as a for-hire motor carrier in Maryland.

16.     Red Classic has named a registered agent for purpose of service of process in Maryland, but does not maintain a principal place of business in Maryland.

17.     Red Classic is registered with the Department of Transportation under MC # 731758 and US DOT # 2097834. According to the SAFER – FMCSA management information systems, Red Classic reported that it operated 577 vehicles and had 705 drivers as of April 2025.

18.     Red Classic is an "employer" of Plaintiff and the putative FLSA collective and Rule 23 classes within the meaning of 29 U.S.C. § 203(d); N.C. Gen. Stat. § 95-25.2(5); and Md. Code Ann., Lab. & Empl. § 3-401(b).

19.     Red Classic has employed at least one person in Maryland at all relevant times, making it an employer for purposes of the MWPCL, Md. Code Ann., Lab. & Empl. § 3-501(b).

20.     Red Classic has employed individuals who are engaged in commerce and/or who handle or otherwise work on goods or materials that are moved in or produced for commerce, including but not limited to Plaintiff and the putative collective and classes.

21.     On information and belief, Red Classic has had gross volume sales or business of at least $500,000 annually for the past three years.

## JURISDICTION AND VENUE

22.     This Court has federal question jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331.

23.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

24.     The Court has personal jurisdiction over Plaintiff because he resided in Maryland the time of the events giving rise to the claims in this case, was recruited in Maryland by Red Classic to travel to North Carolina for purposes of attending Red Classic's orientation at its headquarters there, and performed at least some work in Maryland.

25.     The Court has personal jurisdiction over Red Classic because it maintains multiple facilities in Maryland, is registered to do business in Maryland, employs drivers in Maryland, recruits drivers from Maryland to attend its orientation in North Carolina, and Plaintiff's claims arise from Red Classic's activities in both Maryland and North Carolina.

26.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

27.     The Southern Division of Maryland is the appropriate division for this matter pursuant to Local Rule 501 because neither party currently resides in Maryland.

At the time of the events giving rise to the claims in this case, the named plaintiff was a resident of Prince George's County, Maryland, in the Southern Division of Maryland. He was recruited by Red Classic to attend orientation in North Carolina while residing in Prince George's County.

28.     Plaintiff and all others similarly situated are individually covered by the FLSA because they engaged in commerce or in the production of goods for commerce.

29.     Pursuant to 29 U.S.C. § 216(b), Plaintiff consents to sue as a plaintiff under the FLSA. His consent to sue form is attached as Exhibit B.

## FACTS

30.     Red Classic is a trucking company authorized by the U.S. Department of Transportation to operate as a for-hire motor carrier.

31.     Red Classic serves as the dedicated carrier for Coca-Cola Consolidated Inc., which holds itself out as the largest Coca-Cola bottler in the United States.

32.     Red Classic maintains a terminal in Baltimore, Maryland, and further maintains other facilities in the state.

33.     Red Classic is a subsidiary of Coca-Cola Consolidated Inc.

34.     Red Classic hires local, regional, and dedicated drivers to operate its trucks.

35.     Red Classic hired Plaintiff as a regional driver, assigned to its "Candlewood" terminal, located in or close to Baltimore.

36.     Red Classic's offer letter to Plaintiff, addressed to his home address in Maryland, indicated that his compensation would be $0.63 per mile and that he would

receive "Orientation Pay" in the form of a $300 Comcheck upon "Successful Completion of Orientation."

37.    Plaintiff attended a three-day orientation at Red Classic's headquarters in Charlotte, North Carolina, along with other local, regional, and dedicated drivers, who attended the same sessions that he did.

38.    Orientation consisted of presentations by Red Classic's employees, which included a review of Red Classic's human resources ("HR") policies, instruction on use of Red Classic's equipment and systems, including Samsara (used by Red Classic for dispatch and tracking hours of service) and Comdata (used by Red Classic for truck weighing and fueling), Red Classic's driver performance expectations, and employee benefits.

39.    In addition, Plaintiff completed Red Classic's computer-based modules during orientation.

40.    During orientation, Plaintiff signed standard new hire paperwork.

41.    Plaintiff estimates that he was occupied with orientation tasks for approximately 30 hours over the three-day period.

42.    Red Classic's orientation does not result in a portable credential or certification that could be used with another employer.

43.    The orientation is for the benefit of Red Classic because, *inter alia*, it introduces drivers to Red Classic's policies, procedures, and systems, and is designed to ensure that they can operate Red Classic's trucks and other equipment safely and in compliance with U.S. Department of Transportation regulations.

44.     Drivers only attend Red Classic's orientation after having received an offer letter, in which they are told that they will be compensated for orientation; therefore, they have an expectation that they will be paid for their time spent in orientation.

45.     During orientation, Plaintiff was "employed" by Red Classic within the meaning of the FLSA and the MWHL, and was entitled to be paid at least the minimum wage for all hours worked.

46.     Plaintiff estimates that he was owed at least $217.50 in federal minimum wages for his hours worked during orientation (30 hours x $7.25 per hour).

47.     Plaintiff estimates that he was owed at least $450.00 in Maryland minimum wages for his hours worked during orientation (30 hours x $15 per hour).

48.     The day after orientation was completed, Plaintiff went out with a driver trainer in the trainer's Red Classic truck, and they drove around Charlotte, North Carolina so that Plaintiff could become familiar with Red Classic's equipment. Plaintiff estimates that they were out for between five and six hours. At the end of this session, Plaintiff was assigned his own Red Classic truck, which he drove to the Candlewood terminal in Baltimore.

49.     Red Classic did not pay Plaintiff and other drivers all wages owed under the FLSA or the MWHL for their time in orientation.

50.     Plaintiff and other drivers were entitled to be compensated for all hours worked during orientation, but were not.

51.     Because the $300 Comcheck was treated by Red Classic as an "advance," which was deducted from earned wages in the first paycheck, Plaintiff and other drivers did not receive any wages at all for their time spent in orientation.

52.     Plaintiff and other drivers were paid a wage rate of $0 per hour for orientation, instead of the federal minimum wage of $7.25 per hour or the Maryland minimum wage of $15 per hour.

53.     On information and belief, Plaintiff earned wages for work performed in Maryland in his first paycheck, from which Red Classic deducted his orientation pay.

## NORTH CAROLINA WAGE AND HOUR ACT ALLEGATIONS

54.     Plaintiff's offer letter (which outlined his compensation structure, but failed to indicate that the $300 in orientation pay would be deducted from his first paycheck) was issued to Plaintiff electronically by a Red Classic "Talent Acquisition Partner."

55.     On information and belief, the Talent Acquisition Partner who signed the offer letter worked out of Red Classic's headquarters in North Carolina.

56.     The offer letter indicated that Plaintiff would report to a specific driver manager, "or another individual designated by Red Classic Transit, LLC."

57.     The driver manager named in the letter is employed by Red Classic in Charlotte, North Carolina.

58.     The work performed by Plaintiff and other drivers during orientation was performed in North Carolina.

59.     On information and belief, subsequent to orientation, Plaintiff and other drivers were dispatched and managed by Red Classic employees from its headquarters in North Carolina.

60.     Plaintiff and other drivers were issued their paychecks from Charlotte, North Carolina.

61.     Plaintiff and other drivers were – at all times – subject to policies, procedures, and practices created and maintained by Red Classic executives and other Red Classic employees located in North Carolina.

62.     Red Classic did not notify Plaintiff that the $300 would be treated as an advance and deducted from his first paycheck.

63.     Red Classic did not obtain authorization to deduct $300 from Plaintiff's earnings in his first paycheck.

64.     Red Class has a uniform practice of failing to notify drivers that orientation pay is an advance, and failing to obtain authorization to deduct it from drivers' first paychecks.

65.     In the course of their work for Red Classic, Plaintiff and other drivers returned to North Carolina on at least a weekly basis, and frequently twice per week, to pick up loads from Coca-Cola Consolidated's bottling facilities there.

66.     Plaintiff also took his truck to North Carolina for, *inter alia*, maintenance and repairs on his truck, as well as for its annual inspection.

67.     During the course of his work for Red Classic, Plaintiff regularly drove through North Carolina and Maryland, as well as Arkansas, Georgia, Indiana, Kentucky, Ohio, South Carolina, Tennessee, and Virginia.

## MARYLAND WAGE LAW ALLEGATIONS

68.     Plaintiff re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

69.     Plaintiff's offer letter from Red Classic indicated that his position with Red Classic would be "at Baltimore, MD/R732."

70.     Plaintiff's offer letter was addressed to his home address in Maryland.

71.     Plaintiff was a resident of Maryland at the time he was recruited by Red Classic and at all times while he was employed by Red Classic.

72.     Plaintiff traveled from Maryland to North Carolina to attend Red Classic's new-hire orientation in Charlotte, North Carolina.

73.     Once Plaintiff was assigned his Red Classic truck and sent out over-the-road, Plaintiff's typical schedule was to return every Friday to the Candlewood terminal in Maryland, where he parked his personal vehicle.

74.     Then, the following Monday morning, Plaintiff drove his personal vehicle from his home in Maryland to the Candlewood terminal, where he picked up his truck and started his work week.

75.     Plaintiff performed at least some work in Maryland, as did many other Red Classic drivers.

76.     Many of Red Classic's drivers are assigned to specific Red Classic terminals in Maryland.

77.     The Maryland minimum wage rate has been $15 per hour since January 1, 2024.

78.     The minimum wage that Plaintiff and other Maryland drivers were owed under Maryland law for their time spent in orientation was no less than $450 (30 hours x $15 per hour).

79.     Because Plaintiff and other Maryland drivers received $0 in wages for their hours worked during orientation, Red Classic violated the MWHL, Md. Code Ann., Lab. & Empl. § 3-413.

80.     Because Red Classic did not obtain authorization from drivers to deduct their orientation pay from their earned wages in their first paycheck, Red Classic violated the MWPCL, Md. Code Ann., Lab. & Empl. § 3-503.

## COLLECTIVE ALLEGATIONS
### (Fair Labor Standards Act)

81.     Plaintiff brings an FLSA wage claim for all hours worked against Red Classic on behalf of a collective of drivers pursuant to 29 U.S.C. § 216(b).

82.     Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the collective as follows: All individuals who attended orientation for Red Classic during the three years prior to the filing of this complaint, to the extent that they choose to "opt in" to this action upon notice issued pursuant to 29 U.S.C. § 216(b).

83. These claims meet the requirements for collective action certification under the FLSA.

84. All potential opt-in plaintiffs are similarly situated with respect to the FLSA claims concerning minimum wage because they all attended Red Classic's orientation and were paid $0 in wages.

## CLASS ALLEGATIONS
### (North Carolina Wage and Hour Act)

85. Plaintiff brings the NCWHA claims against Red Classic as a class action pursuant to Fed. R. Civ. P. 23 for and on behalf of the following class for which Plaintiff seeks certification: All drivers who attended Red Classic's orientation in North Carolina during the two years prior to the filing of this complaint.

86. This case may be maintained properly as a class action under Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2) and/or 23(b)(3).

87. The class is so numerous that joinder of all potential class members is impracticable. On information and belief, the class is comprised of at least 700 drivers.

88. There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include: whether Red Classic was legally obligated to provide notice that the $300 in orientation pay was only an advance; whether Red Classic obtained authorization at any point to deduct the $300 advance from drivers' initial paychecks; and whether the NCWHA allows for any deductions from promised wages that are not authorized by the employee.

89.     The class claims asserted by Plaintiff are typical of the claims of potential

class members.  Red Classic operates in a highly regulated industry that requires it to

maintain standard on-boarding procedures pursuant to laws and regulations governing

motor carriers.  Plaintiff's and all class members' claims for damages can readily be

calculated from Red Classic's business records.

90.     Plaintiff will fairly and adequately protect and represent the interests of

the class.  His interest in holding Red Classic accountable for its wage violations

motivates him to bring this case as a class action. Plaintiff retained the undersigned

counsel, who are experienced in class actions generally and on behalf of individuals

working in the trucking industry.

91.     A class action is superior to other available methods for the fair and

efficient adjudication of this controversy.  The alternative – numerous identical lawsuits

alleging similar or identical causes of action – would not serve the interests of judicial

economy and the prosecution of separate actions by the individual potential class

members would create a risk of inconsistent or varying adjudications with respect to

individual potential class members that would establish incompatible standards of

conduct for Red Classic.  Moreover, some class members – particularly current drivers –

may be reluctant to bring their claims individually for fear of retaliation by Red Classic.

92.     Public policy supports the broad remedial purposes of class actions in

general and specifically to vindicate the rights afforded by the North Carolina wage

laws, especially where individual claims may be too small to warrant the expense of

litigation.

93.     This class action will not be difficult to manage due to the uniformity of claims among the class members and the amenability of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

94.     The contours of the class will be easily defined by reference to business records kept by Red Classic.

95.     Red Classic acted on grounds generally applicable to the class.

## CLASS ALLEGATIONS
### (Maryland Wage Claims)

96.     Plaintiff brings the Maryland wage claims (under the MWHL and the MWPCL) against Red Classic as a class action pursuant to Fed. R. Civ. P. 23 for and on behalf of the following class for which Plaintiff seeks certification: all drivers who performed at least some work in Maryland and attended Red Classic's orientation during the three years prior to the filing of this complaint.

97.     This case may be maintained properly as a class action under Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2) and/or 23(b)(3).

98.     The class is so numerous that joinder of all potential class members is impracticable.  On information and belief, the class is comprised of at least 100 drivers.

99.     There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include: Red Classic's orientation schedule and the number of hours Red Classic expected individuals to work during orientation; the compensability of work performed during orientation; whether an advance on future wages can satisfy the minimum wage

requirements of the MWHL; and whether the MWPCL allows for deductions from promised wages that are not authorized by the employee.

100.     The class claims asserted by Plaintiff are typical of the claims of potential class members.  Red Classic operates in a highly regulated industry that requires it to maintain standard on-boarding procedures pursuant to laws and regulations governing motor carriers.  Plaintiff's and all class members' claims for damages can readily be calculated from Red Classic's business records.

101.     Plaintiff will fairly and adequately protect and represent the interests of the class.  His interest in holding Red Classic accountable for its wage violations motivates him to bring this case as a class action. Plaintiff retained the undersigned counsel, who are experienced in class actions generally and on behalf of individuals working in the trucking industry.

102.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The alternative – numerous identical lawsuits alleging similar or identical causes of action – would not serve the interests of judicial economy and the prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Red Classic.  Moreover, some class members – particularly current drivers – may be reluctant to bring their claims individually for fear of retaliation by Red Classic.

103.     Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the Maryland wage laws,

especially where individual claims may be too small to warrant the expense of litigation.

104.    This class action will not be difficult to manage due to the uniformity of claims among the class members and the amenability of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

105.    The contours of the class will be easily defined by reference to business records kept by Red Classic.

106.    Red Classic acted on grounds generally applicable to the class.

## CLAIMS FOR RELIEF

### COUNT I
### (FLSA Minimum Wage)

107.    Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

108.    Red Classic violated the FLSA, as detailed above, by failing to pay Plaintiff and other drivers an hourly rate equal to or exceeding the federal minimum wage for all hours that they worked for Red Classic during orientation.

109.    Red Classic is liable to Plaintiff and other drivers for the damages that they suffered on account of Red Classic's violations of the FLSA.

110.    Red Classic's violation of the FLSA was willful, and Red Classic did not act in good faith and with a reasonable belief that it had paid drivers all wages owed under the FLSA.

111.     Plaintiff brings this claim individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b).

## COUNT II
### (North Carolina Wage and Hour Act Claim)

112.     Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

113.     Red Classic has violated the NCWHA, N.C. Gen. Stat. §§ 95-25.6, 25.13(1) & (4), by failing to notify Plaintiff that the $300 would be treated as an advance and deducted from his first paycheck, and by failing to obtain authorization to do so.

114.     Red Classic is liable to Plaintiff and other drivers for the damages that they suffered on account of its violations of the NCWHA.

115.     Red Classic's violation of the NCWHA was not in good faith.

116.     Red Classic did not have reasonable grounds for believing its practices were compliant with the NCWHA.

117.     Plaintiff brings this claim individually and on behalf of all others similarly situated pursuant to N.C. Gen. Stat. § 95-25.22(b).

## COUNT III
### (Maryland Wage and Hour Law Claim)

118.     Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

119.     By failing to pay Plaintiff and other drivers any wages at all for orientation, Red Classic has violated the minimum wage provisions of the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-413.

120.     Red Classic failed to pay Plaintiff and other drivers an hourly rate equal to or exceeding the Maryland minimum wage of $15 per hour for all the hours worked for Red Classic during orientation.

121.     Red Classic is liable to Plaintiff and other drivers for the damages that they suffered on account of Red Classic's violations of the MWHL.

122.     Red Classic did not act in good faith and with a reasonable belief that it had paid drivers all wages owed under the MWHL.

123.     Plaintiff brings this claim pursuant to Md. Code., Lab. & Empl. § 3-427 for himself and all others similarly situated.

## COUNT IV
### (Maryland Wage Payment and Collection Law Claim)

124.     Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

125.     By failing to notify Plaintiff and other drivers that the $300 would be treated as an advance and deducted from his first paycheck, and by failing to obtain authorization to do so, Red Classic has violated the MWPCL, Md. Code Ann., Lab. & Empl. § 3-503.

126.     Red Classic did not withhold drivers' wages as a result of a bona fide dispute.

127.     Plaintiff brings this claim pursuant to Md. Code., Lab. & Empl. § 3-507.2(a) for himself and all others similarly situated.

## JURY DEMAND

Plaintiff, individually and on behalf of others similarly situated, hereby demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

a.      Certification of an opt-in class for Plaintiff's FLSA claims against Red Classic pursuant to 29 U.S.C. § 201, *et seq.*;

b.      Permission for Plaintiff to notify fellow drivers of their right to opt into this action to pursue a claim against Red Classic under the FLSA, pursuant to 29 U.S.C. § 216(b);

c.      An award of damages against Red Classic for all unpaid minimum wages that are owed to Plaintiff and all similarly situated drivers under the FLSA;

d.      Statutory liquidated damages against Red Classic under the FLSA;

e.      A finding that Red Classic's violation of the FLSA was willful and, therefore, that the statute of limitations for the FLSA claim is three years;

f.      Certification of this action as a class action under Rule 23(b)(1), (b)(2) and (b)(3);

g.      Appointment of Plaintiff Maurice Smith as class representative and his counsel as class counsel;

h.      An award of damages against Red Classic for Plaintiff and the proposed class for the failure to provide notice and the unauthorized deduction of orientation pay from drivers' initial paycheck under the NCWHA;

i.      Statutory liquidated damages under the NCWHA;

j.      A finding that Red Classic's violation was not in good faith and that Red Classic did not have reasonable grounds for believing its practices were compliant with the NCWHA;

k.      An award of damages against Red Classic for all unpaid minimum wages that are due to Plaintiff and the proposed class under the MWHL;

l.      Statutory liquidated damages against Red Classic under the MWHL;

m.      An award of damages against Red Classic for Plaintiff and the proposed class for the amount of orientation pay deducted from their initial paycheck(s) under the MWPCL;

n.      A finding that Red Classic did not withhold drivers' wages as a result of a bona fide dispute;

o.      Statutory treble damages under the MWPCL;

p.      Attorneys' fees and costs;

q.      Pre- and post-judgment interest; and

r.      Any other relief as this Court deems just and proper.

Respectfully submitted,

MAURICE SMITH, individually and on behalf
all others similarly situated,

By his attorneys,


 /s/  Matthew B. Kaplan
_____

Matthew B. Kaplan (D. Md. Bar No. 18724)
The Kaplan Law Firm
1100 N Glebe Rd
Suite 1010
Arlington, VA 22201
(703) 665-9529 (telephone)
mbkaplan@thekaplanlawfirm.com


Hillary Schwab, Esq.*
Rachel Smit, Esq.*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel:  (617) 607-3260
Fax:  (617) 488-2261
hillary@fairworklaw.com
rachel@fairworklaw.com

*Pro hac vice motion forthcoming

Dated: December 16, 2025